F I L E D
Clerk
District Court

AUG 23 2011

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| FIRSTNET INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> ZHENG RUI BROTHER CORP., <br><br> Defendant. | Civil Case No. 11-00005 <br><br> **OPINION AND ORDER RE: MOTION TO QUASH SUBPOENA** |

1  Before the court is the "Motion to Quash Subpoena" ("the MTQ") filed by Third-Party Petitioner CITY TRUST BANK ("the Bank"). *See* Docket No. 11; *see also* Docket No. 12 (declaration in support). The court heard oral argument on the MTQ on August 10, 2011. *See* Docket No. 17. As explained below, the court **DENIES** the MTQ.

**(I)   BACKGROUND**

  **(A)   The Case**

Plaintiff FIRSTNET INSURANCE COMPANY is an insurer that entered into a fire-loss insurance contract ("the Policy") with Defendant ZHENG RUI BROTHER CORPORATION. *See* Docket No. 1 ("the Complaint") ¶¶I-IV. The total value of the Policy is $405,346.00, with the amount payable based on an inventory supplied by Defendant. *See id.* ¶IV. In October of 2010, a clothing store that Defendant operates burned down. *See id.* ¶V. Defendant valued its loss at $404,718.53 and claimed against Plaintiff for that amount under the Policy. *See id.* ¶VI. Defendant, however, has failed to present documentation supporting its valuation—such as documentation to support its claimed inventory, or its claimed income and expenses. *See id.* ¶VII.

1  Moreover, Plaintiff alleges that it has evidence that Plaintiff either intentionally started the fire, or recklessly increased the risk of fire by the introduction to the premises of petroleum products and heat sources. *See* Complaint ¶IX. Such facts would void the Policy, and so Plaintiff has sought declaratory relief to determine its rights and obligations under the Policy. *See id.* ¶¶IX-X. Defendant has counterclaimed. *See* Docket No. 2.

**(B)** **The Subpoena**

On June 9, 2011, Plaintiff caused a subpoena ("the Subpoena") to be delivered to the Bank. *See* Docket No. 12. Plaintiff did this because Zhen Biao—Defendant's president and sole shareholder—testified in a sworn statement that he used the Bank as Defendant's financial institution. *See* Docket No. 15 at 2:2-10. In the Subpoena, Plaintiff seeks all documents that refer or relate to Defendant or Zhen Biao, in order "to build an acceptable model of [Defendant's] finances" for purposes of this litigation. Docket No. 15 at 1:24-2:1. The date and time for compliance with the Subpoena was 9:00 AM on June 30, 2011. *See* Docket No. 12, Exh. A.

The Subpoena was hand-delivered to Vivian D. Bernardo, Head Teller at the Bank. *See* Docket No. 12 ¶1. Ms. Bernardo is not the registered agent for service of process at the Bank, nor is she an officer, manager, or general agent of the Bank. *See id.* ¶4.

On July 6, 2011, the Bank moved to quash the Subpoena. *See* Docket No. 11 ("the MTQ"); *see also* Docket No. 12 (declaration in support). Plaintiff opposed the MTQ on July 15, 2011. *See* Docket No. 15 ("the Opposition). The Bank filed no reply.

**(II)** **JURISDICTION AND VENUE**

Jurisdiction appears proper. Plaintiff's sole cause of action is under the Declaratory Judgment Act, Section 2201 of Title 28, United States Code. *See* Complaint ¶III. Section 2201 is not a jurisdictional statute; federal jurisdiction must exist independently. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983). To come within the subject-matter jurisdiction of the federal courts, actions under the Declaratory Judgment Act must satisfy the well-pleaded complaint test, which screens complaints that anticipate defenses based on

1. federal law. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 673-74 (1950).
2. Declaratory actions invert actions to enforce rights, so, in this context, under the well-pleaded
3. complaint test we ask whether the defendant could have brought a coercive action in this
4. court. *See Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997).
5.     Here, Defendant could have brought a coercive action in this court for breach of
6. contract, because the parties are of diverse citizenship and the amount in controversy exceeds
7. the minimum required under the diversity statute. *See* 28 U.S.C. § 1332(a). And, in fact,
8. Defendant *has* brought such a coercive action, in the form of its counterclaims. *See* Docket
9. No. 2 at ¶5 (citing 28 U.S.C. § 1332(a)).
10.     Venue is proper in this District, the District of the Northern Mariana Islands, because
11. this is a district in which a substantial part of the events or omissions giving rise to the claim
12. occurred. *See* 28 U.S.C. § 1391(a)(2).
13. **(III)  APPLICABLE STANDARDS**
14.     Rule 45 of the Federal Rules of Civil Procedure governs the use of subpoenas in civil
15. discovery. *See generally* FED. R. CIV. P. 45. It provides that, upon a "timely motion," the
16. court must quash or modify a subpoena that (1) fails to allow a reasonable time to comply,
17. (2) requires a certain kind of excessive travel, (3) requires disclosure of privileged or other
18. protected matter, if no exception or waiver applies, or (4) subjects a person to undue burden.
19. *See id.* 45(c)(3)(A)(i)-(iv).
20.     "The burden of persuasion in a motion to quash a subpoena issued in the course of
21. civil litigation is borne by the movant." *Green v. Baca*, 226 F.R.D. 624, 653-54 (C.D. Cal.
22. 2005) (quotation marks and brackets omitted). "The party issuing the subpoena must
23. demonstrate, in turn, that the information sought is relevant and material to the allegations
24. and claims at issue in the proceedings." *Id.* (quotation marks and brackets omitted).
25. **(IV)  DISCUSSION**
26.     **(A)  The Arguments**
27.     The Bank moves to quash the Subpoena for three reasons: (1) it seeks private
28. financial records protected by a standard for production that Plaintiff has not met ("the

Protected Matter Argument"); (2) it was not properly served ("the Service Argument"); and (3) complying with it would unduly burden the Bank ("the Undue Burden Argument"). *See generally* Docket No. 11.

Plaintiff responds, as a preliminary matter, that the Bank has waived any objections it might have to the Subpoena ("the Waiver Argument") by failing to serve them in accordance with the deadlines established under Rule 45(c)(2)(B). *See* Docket No. 15 at 4:2-21 (citing FED. R. CIV. P. 45(c)(2)(B)). Plaintiff then responds to the Bank's arguments "on the merits." Plaintiff starts with the Service Argument, and contends that service was proper because Commonwealth law allows "abode service" on a corporation. *See id.* at 4:22-6:8. Next, as to the Protected Matter Argument, Plaintiff contends that it has a compelling need for the documents sought, that the documents sought are not privileged, and that any privacy concerns may be cured by protective order. *See id.* at 6:9-9:2. Finally, as to the Undue Burden Argument, Plaintiff contends that the asserted burdens are purely speculative, and that compliance is likely to be fairly easy since Defendant used the Bank "sparingly." *Id.* at 9:3-16.

### (B) Analysis

There are four arguments in play. In Plaintiff's order, they are: (1) the Waiver Argument; (2) the Service Argument; (3) the Protected Matter Argument; and (4) the Undue Burden Argument. The court takes each in turn, to the extent necessary.

#### (1) The Waiver Argument

Objections to a subpoena must "written," and must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(c)(2)(B).

As Plaintiff noted in the Opposition, "[a] nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). *See also McCoy v. Southwest Airlines*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) (same). This waiver encompasses all grounds for objection, including privilege. *See In re DG Acquisition*

1  *Corp.*, 151 F.3d 75, 81 (2d Cir. 1998). *Cf. Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.
2  1981) ("[F]ailure to object to interrogatories within the time fixed by Rule 33 [of the Federal
3  Rules of Civil Procedure] constitutes a waiver of any objection," even if the objection was
4  "that the information sought is privileged.").
5        "Nonetheless, in unusual circumstances and for good cause, the failure to act timely
6  will not bar consideration of objections to a Rule 45 subpoena." *McCoy*, 211 F.R.D. at 385
7  (quotation marks and emendations omitted). "Courts have found unusual circumstances
8  where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery;
9  (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness
10 and counsel for the subpoenaing party were in contact concerning the witness' compliance
11 prior to the time the witness challenged the legal basis for the subpoena." *Id.*
12       Here, the Subpoena was served on June 9, 2011. The time specified for compliance
13 with the Subpoena was June 30; fourteen days after the Subpoena was served is June 23.
14 Under Rule 45(c)(2)(B), then, any objection to the Subpoena should have been served by
15 June 23—"the earlier of the time specified for compliance (June 30) or 14 days after the
16 subpoena is served (June 23)." FED. R. CIV. P. 45(c)(2)(B). However, the Bank did not serve
17 its objections to the Subpoena until June 29. *See* Docket No. 15-1 at 4-7.
18       Additionally, the "unusual circumstances" that excuse failure to act timely are not
19 present here. *See McCoy*, 211 F.R.D. at 385. The Subpoena is not overbroad on its face, and
20 does not exceed the bounds of fair discovery. Rather, it seems fairly drawn, and seeks
21 information that Plaintiff clearly needs in order to make its case.
22       Therefore, the Bank failed to serve timely objections to the Subpoena. It follows that
23 the Bank has waived any objections to the Subpoena it might have, including ones based on
24 privilege. *See Moon*, 232 F.R.D. at 636; *In re DG Acquisition Corp.*, 151 F.3d at 81.
25       At the hearing, counsel for the Bank admitted that the objections were not timely
26 served and so had been waived. However, he asserted a distinction between (1) serving
27 objections to a subpoena, and (2) filing a motion to quash that subpoena. He defended that
28 distinction by pointing out that Rule 45 has a certain deadline for serving objections, but then

has another, seemingly more flexible deadline for filing a motion to quash. *See* FED. R. CIV. P. 45(c)(2)(B) (objections), -(c)(3)(A) (motion). Then, based on that distinction, he argued that the MTQ should still be considered on the merits because it was "timely" under Rule 45(c)(3)(A), even though the objections it pressed had been waived.

The court first notes that it need not consider this argument. Courts generally refuse to consider new claims or theories raised for the first time at oral argument. *See, e.g., Campbell v. Kincheloe*, 829 F.2d 1453, 1456 n.1 (9th Cir. 1987). Moreover, the Bank inexplicably failed to reply to the Opposition, on which ground the court could find—and perhaps should find—that the Bank has waived all rights of reply to Plaintiff's arguments.

Nonetheless, the court will consider and reject the Bank's untimely-objections-but-timely-motion argument. Courts do generally find that, under Rule 45, the time period for serving objections differs from the time period for filing a motion to quash. *See, e.g., Wells Fargo Bank, N.A. v. MPC Investors, LLC*, No. 09-CV-11249, 2010 WL 3259371, at *2 (E.D. Mich. Aug. 2, 2010); *West Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 08-CV-80897, 2010 WL 181088, at *2 (D. Del. Jan. 19, 2010); *Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 WL 2706965, at *3 (N.D. Ill. Aug. 25, 2009).

However, the objections to a subpoena are the very foundation of *any* motion to quash that subpoena. This point is perfectly demonstrated by the Bank's own untimely set of written objections, which makes the very same points that the Bank makes in the MTQ. *Compare* Docket No. 15-1 at 4 *with* Docket No. 11. The Bank cannot waive its objections to the Subpoena by serving them in an untimely manner—as it admits that it did—and then make those untimely objections the basis of a motion to quash, even if the motion to quash is technically "timely." To hold otherwise would render meaningless the objections deadline in Rule 45(c)(2)(B): in that case, the sole timeliness inquiry on a motion to quash would be whether the motion alone is timely, rather than whether the motion is timely *and* whether it asserts adequately preserved objections. The fact that the Rules have different deadlines for the serving of objections and the filing of the motion to quash persuades the court that the correct timeliness inquiry is the latter one.

1    Since the Bank has waived any objections it might have to the Subpoena, then, the
2    MTQ must fail insofar as it depends on those objections. And since the MTQ depends on
3    those objections entirely, it fails entirely.
4    There is no need to consider any further argument. As such, the court must decline
5    the Bank's invitation to create case-law reconciling its purported conflict between its duties
6    under CNMI local law and its duty to respond to a subpoena in a federal civil action.

7    **(V)    CONCLUSION**

8    The MTQ is hereby **DENIED** because it depends entirely on waived objections. The
9    Bank is therefore **ORDERED** to comply with the Subpoena by 10:00 AM on Wednesday,
10   August 31, 2011.
11   To the extent possible in this litigation, Plaintiff shall safeguard the confidentiality
12   of the documents produced in response to the Subpoena. Should residual privacy concerns
13   remain, the court encourages the parties to negotiate a stipulated protective order for the
14   court's consideration.

**SO ORDERED** on August 23, 2011.

RAMONA V. MANGLONA
Chief Judge