F I L E D
Clerk
District Court

APR -2 2012

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| FIRSTNET INSURANCE COMPANY,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>ZHEN RUI BROTHER CORPORATION,<br><br>Defendant/Counter-Plaintiff. | Case No.: 1-11-CV-00005<br><br>DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL |

On February 7, 2012, after trial of the above-captioned matter, a jury returned a verdict in favor of FirstNet Insurance Company ("FirstNet"). (ECF No. 87.) The next day, based on the jury's special verdict, the Court entered a declaratory judgment in favor of FirstNet. (ECF No. 89.) Now before the Court is Zhen Rui Brother Corporation's ("Zhen Rui") motion for a new trial filed on March 7, 2012 ("Motion," ECF No. 94). FirstNet has filed an opposition (ECF No. 96), and Zhen Rui has filed a reply (ECF No. 97). The motion has been fully briefed and the Court concludes that it does not require oral argument. Having considered the papers and the record, the Court hereby denies the motion for the reasons set forth below.

## I.    Standards

After a jury trial, the district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R.

Civ. P. 59(a)(1)(A). In determining whether to grant a new trial, the court is "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). These grounds include "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal citation and quotation marks omitted). Where the sufficiency of the evidence is in question, the court may order a new trial "only if it finds that the jury's verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1248 (9th Cir. 1998) (internal citation and quotation marks omitted). The decision as to whether to grant a new trial motion lies within the discretion of the district court. *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1013 (9th Cir. 2007).

## II. Discussion

Zhen Rui asserts that a new trial is warranted because (1) the verdict was against the weight of the evidence and (2) various alleged errors and irregularities were unfairly prejudicial.

### a. *Sufficiency of the Evidence*

The jury found that on or about October 30, 2010, either Zhen Rui intentionally caused the fire at BL Clothing Store or someone with the permission of Zhen Rui intentionally caused the fire. (Special Verdict Form, ECF No. 87) The jury also found that Zhen Rui intentionally and materially overstated to FirstNet the actual cash value of its loss in the fire. (*Id.*) Zhen Rui claims that there was "no evidence presented by anybody" to show that Zhen Rui's owner, Zheng Biao ("Biao"), had a motive to set the fire or to cause the fire to be set, and no "reasonable evidence" that Zhen Rui overstated the actual cash value of its loss. (Motion at 5.)

Ample evidence was presented at trial to support both of the jury's findings. The testimony of two fire investigators, one from the Department of Public Safety and the other hired by FirstNet, clearly established the cause of the fire as arson. A gasoline container was found inside the store, and gasoline substance was poured over rolls of clothing materials that were connected throughout the store. At trial, Zhen Rui's counsel also argued that the cause of the fire was arson. The question then turned on whether the arson was caused by Zhen Rui or its agent. As to motive to cause the fire, the jury heard that Zhen Rui, which had operated its clothing store for years without fire insurance coverage, had purchased a policy only a few months before the fire occurred. Furthermore, trails of clothes were found on the floor connecting the shelves as well as between the shelves. (Pl's Ex. 13.32 to 13.42) The trails of clothes had a strong odor of volatile hydrocarbons or gaseous substance, and they were in an area below the mezzanine or wooden platform warehouse that contained the bulk of Zhen Rui's inventory. (*Id.*) Zhen Rui's recovery under the policy is limited to the actual inventory lost or damaged in the fire.

As to the opportunity to cause the fire, the jury heard that only Biao and one employee had keys to the store; and that the firemen that responded to the fire found all the locks to the store doors fully intact. The only possible entry or exit way found open was the small bathroom window. However, the broken sliding glass door to this window had most of the glass still intact. (Pl's Ex. No. 9.4)

As to the actual cash value of the loss, FirstNet's expert in accounting testified that Zhen Rui was at least $220,000 short of cash to support its claim that it had lost more than $400,000 in inventory. Zhen Rui did not produce receipts, bills of lading, or other documents to substantiate the claimed value of its loss. Based on all the evidence presented at trial, this Court cannot say that there was no reasonable basis for the jury's verdict. The weight of the evidence was clearly

in favor of the verdict for FirstNet.

     b. *Unfairness*

Zhen Rui asserts that it suffered unfair prejudice because (1) the Court denied its motion to exclude the testimony of two of FirstNet's experts, J. Scott Magliari and James Kirby; (2) an unsworn court security officer, acting as bailiff, communicated with the jurors; and (3) the Court failed to admonish the jurors before an overnight break in deliberations.

     1. Expert testimony

"A district court's decision whether to allow expert testimony is reviewed for abuse of discretion." *Bonin v. Calderon,* 59 F.3d 815, 838 (9th Cir. 1995). Zhen Rui has not presented any argument or legal authority to support his assertion that it was an abuse of discretion or manifest error to allow the experts to testify. (*See* Motion at 5.) There is no indication that the experts' testimony, though unfavorable, was unfair to Zhen Rui.

     2. Contact Between Jurors and Third Person

Upon submission of the case to the jury, the clerk administered the bailiff's oath to Court Security Officer ("CSO") Donny Fejeran. The oath reads: "Do you, and each of you, solemnly swear that you will take this jury in charge; that you will not communicate with them except by order of this court; that you will allow no one to communicate with them; and that you will conduct them into court again whenever so requested by them or by order of the court." (Motion at 2-3.) CSO Fejeran took the oath on behalf of all CSOs assigned to the Court.

Zhen Rui claims that contact between an unsworn bailiff and the jurors is grounds for a new trial. The alleged improper communication is that CSO Ramon T. Agulto, acting as bailiff and not personally having taken the oath, received a written note from the jury stating: "We the Jury have made are [*sic*] verdict." (Motion at 3.)

"[G]reat deference is granted the trial court in reviewing decisions on jury incidents, and the trial court has great leeway in determining the extent of evidentiary hearings and the like where there are allegations of jury irregularity." *Rinker v. Napa County,* 724 F.2d 1352, 1354 (9th Cir. 1983) (internal citations omitted). "A defendant must demonstrate 'actual prejudice' resulting from an ex parte contact to receive a new trial." *United States v. Madrid,* 842 F.2d 1090, 1093 (9th Cir. 1988). "Any unauthorized communication between a party or an interested third party and a juror creates a rebuttable presumption of prejudice." *Rinker,* 724 F.2d at 1354. In *Rinker,* a new trial was required when during jury deliberations the plaintiff himself "approached juror Molnar as she returned to the jury room and told her that if she had any questions about the case, he would be glad to answer them for her." *Id.* at 1353. However, a new trial was not required where a juror received anonymous harassing telephone calls that did not touch on the merits and were not threatening. *United States v. Armstrong,* 654 F.2d 1328, 1332–33 (9th Cir. 1981) (cited with approval in *Rinker*).

The alleged improper communication between CSO Agulto and the foreperson does not give rise to a rebuttable presumption of prejudice, because the communication did not involve an interested third party and was not unauthorized. It has not been alleged that the bailiff had an interest in the case or communicated with any juror about the merits. Indeed, Zhen Rui does not allege that the bailiff communicated anything at all to the foreperson; the only assertion is that the foreperson communicated with the bailiff, merely to pass a note to the judge. Zhen Rui does not allege that the foreperson spoke to the bailiff or that the bailiff spoke to the foreperson. The communication occurred after deliberations were completed, and consisted of no more than having the bailiff alert the court that the jury had reached a verdict. The communication did not touch on the substance of the verdict.

Moreover, the communication was authorized by the Court. The Court permitted CSO Fejeran to take the bailiff's oath on behalf of all CSOs who might serve as bailiff, including CSO Agulto. CSO Agulto's contact was consistent with his duties as bailiff and not outside the scope of his authority. The foreperson's conduct was consistent with the Court's instructions on communication with the Court and return of verdict. Zhen Rui has not pointed to any federal statute or case law for the proposition that the Court's procedure is improper and creates a structural defect in the trial.

Upon consideration of the totality of these circumstances, Zhen Rui has failed to allege facts that would give rise to a presumption of prejudice and support granting a new trial.

Zhen Rui further asserts that its allegations of improper communication go beyond the transmittal of the note about the verdict. (Reply at 2.) Yet Zhen Rui fails to set forth any specifics whatsoever about the time, circumstances, or substance of any other private communication between CSO Agulto and a juror. Zhen Rui is merely inviting the Court to go on a fishing expedition for other contact based solely on the fact that CSO Agulto conveyed a routine note from the jury to the judge. The Court finds that on these thin allegations, no evidentiary hearing is warranted.

### 3. Failure to Admonish Jurors Before Separation

Zhen Rui asserts that the Court's alleged failure to admonish the jurors before they separated on the night of Monday, February 6, warrants a new trial. In support, Zhen Rui cites to a 67-year-old state court case, *McDowd v. Pig'n Whistle Corp.*, 160 P.2d 797 (Cal. 1945). Yet Zhen Rui is incorrect in stating that *McDowd* stands for the proposition that "[i]f the Court did not authorize the temporary separation of the Jury, . . . then the authorization is invalid." (Motion at 6.) It appears that the statutory rule in California was that jurors had to remain in

deliberation at the courthouse until they reached a verdict, but during World War II, because of the danger of night air raids, the rule was relaxed. *Id.* at 798. The issue in *McDowd* was whether a new trial was required because the trial judge had allowed the jury to go home for the night without the consent of the parties. *Id.* The California Supreme Court held that it was not. "Even when the separation is not by leave of court it is almost the universal rule that in order to set aside the verdict *there must be some evidence of other misconduct, in addition to the mere fact of separation, which has operated to the party's prejudice.*" *Id.* at 799 (emphasis in original; internal quotation marks and citation omitted). Zhen Rui cites no authority for the proposition that failure to admonish the jury on one occasion, without any evidence of prejudice, is grounds for a new trial.

Zhen Rui concedes that the Court admonished the jury after closing arguments and before separation for the weekend on Friday, February 3. (*See* Motion at 2.) Without any allegations of fact to raise a suspicion that a juror failed to heed the admonishment throughout the deliberations, there is no basis to presume and investigate improper conduct. To do so would undermine confidence in the jury system. "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct." *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, (1933) (Brandeis, J.); "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." *Holt v. United States*, 218 U.S. 245, 251 (1910) (Holmes, J.); *see also United States v. Polizzi*, 500 F.2d 856, 886–87 (9th Cir. Cal. 1974) (citing *Holt* and *Fairmont Glass Works*).

//

/

### III. Conclusion

Because Zhen Rui has failed to show that the great weight of the evidence was against the jury's verdict or that the trial was unfair, the Motion for a New Trial is hereby DENIED. The hearing set for April 6, 2012, is hereby VACATED.

IT IS SO ORDERED this 2nd day of April, 2012.

_____
RAMONA V. MANGLONA
Chief Judge

-8-